JOSEPH P. RUSSONIELLO (CABN 44332)
United States Attorney

BRIAN J. STRETCH (CABN 163973)
Chief, Criminal Division

GARTH HIRE (CABN 187330)
Assistant United States Attorney

    1301 Clay Street, Suite 340-S
    Oakland, California 94612
    Telephone:  (510) 637-3929
    Facsimile:   (510) 637-3724
    E-Mail:     Garth.Hire@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 07-00442 SBA |
|     Plaintiff, | UNITED STATES' SENTENCING MEMORANDUM FOR DEFENDANT THOMAS RICHARD WILLIAMS |
| v. | |
| THOMAS RICHARD WILLIAMS, | Hearing Date:  March 11, 2008 |
|     Defendant, | Hearing Time:  10:00 a.m. |

**I.**

**INTRODUCTION**

On July 12, 2007, a federal grand jury indicted Thomas Richard Williams ("defendant"), along with his co-defendant Rafael Miranda, for conspiracy to possess unregistered firearms, namely, silencers, in violation of 18 U.S.C. § 371. The defendant and the government subsequently submitted a plea agreement to the Court pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) and the Court ordered the United States Probation Office (USPO) to prepare a pre-plea presentence investigation report (PSR). A hearing for change of plea and sentencing is currently scheduled for March 11, 2008.

In the plea agreement, defendant agreed to plead guilty to the sole count of the indictment and the parties agreed that defendant should be sentenced to sixty months (five years) imprisonment, three years supervised release, and a $100 special assessment. In addition, both the plea agreement and the PSR correctly calculate the ultimate United States Sentencing Guideline (U.S.S.G.) offense level as 23 and the applicable guideline range as 57-60 months, given that defendant is a criminal history category I.  The government respectfully requests that this Court accept the plea agreement entered into by the parties and proceed with a change of plea and sentencing of defendant.

## II.

## SENTENCING GUIDELINES CALCULATIONS

The parties agree with the USPO's computation of the sentencing guidelines applicable to defendant as follows:

| | | |
|---|---|---|
| Base Offense Level: | 20 | U.S.S.G. § 2K2.1(a)(4)(B)(II)(ii)(I) (offense involved a firearm proscribed by 26 U.S.C. § 5845(a) (silencer) and defendant is a prohibited person) |
| | + 2 | U.S.S.G. § 2K2.1(b)(4)(B)(offense involved firearms with obliterated serial numbers) |
| | + 4 | U.S.S.G. § 2K2.1(b)(6) (firearm to be used in connection with another felony offense) |
| | – 3 | U.S.S.G. § 3E1.1(a) & (b) (acceptance of responsibility) |
| **Total** | **23** | |

## III.

## DISCUSSION OF GUIDELINES CALCULATIONS

**A.   Base Offense Level and Specific Offense Characteristics**

Defendant admits in the factual basis of the plea agreement (paragraph 2) that he conspired with co-defendant Rafael Miranda to receive and possess firearms with obliterated serial numbers that were equipped with silencers to be used in armed robberies.  Based on defendant's admissions, the parties and the USPO are in agreement that defendant's adjusted offense level is 26, prior to acceptance of responsibility.  (PSR ¶ 20).

**B.**     **U.S.S.G. § 3E1.1 (Acceptance of Responsibility)**

The government respectfully recommends that the defendant be granted a two-point reduction in offense level under U.S.S.G. § 3E1.1(a) because he has "clearly demonstrate[d] acceptance of responsibility for his offense" under the terms of § 3E1.1(a) by truthfully admitting the facts establishing his guilt.

Defendant is likewise entitled to a third point for acceptance of responsibility under the distinct standard set forth in U.S.S.G. § 3E1.1(b). To qualify for this third point, the defendant must have "assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently." § 3E1.1(b). Because the defendant intends to plead guilty in this case in a timely manner that avoided any preparation for trial, the government hereby moves that the he be granted this third point as well.

## IV.

## STATUTORY SENTENCING FACTORS

**A.**     **The Sentencing Guidelines Post-*Booker***

Under the Sentencing Reform Act as modified by *United States v. Booker*, 543 U.S. 220 (2005), this Court must analyze and consider the guideline factors before imposing sentences in federal criminal cases. 543 U.S. at 259, 261 (noting that Sentencing Reform Act "nonetheless requires judges to take account of the Guidelines together with other sentencing goals"); *see also United States v. Cantrell*, 433 F.3d 1269, 1279 (9th Cir. 2006) (noting that the "[c]ontinuing duty of district courts to consult the Guidelines is statutory"). This Court, having calculated the guideline range, should then look to the factors set forth by Congress in 18 U.S.C. § 3553(a) to determine a reasonable sentence for defendant.

**B.   Consideration of the 3553(a) Factors**

   **1.   Nature and Circumstances of the Offense and History and Characteristics of Defendant**

   **a.   Nature and Circumstances of the Offense**

The nature and circumstances of the offense demonstrate the need for the statutory maximum sixty-month sentence. The defendant and Rafael Miranda conspired to purchase, and did in fact purchase, two silenced firearms with obliterated serial numbers with the intent to use those firearms to rob – and potentially murder – targets with large amounts of cash. (PSR ¶¶ 7-12). The nature and circumstances of the offense demonstrate a cold and calculated willingness by the defendant to use dangerous and untraceable firearms to commit violent crimes. The offense is extremely serious and merits the statutory maximum sentence, which is also within the applicable guideline range.

   **b.   History and Characteristics of the Defendant**

Defendant is a former San Diego Police Department Officer whose law enforcement career ended in the early 1970's after he was convicted of grand theft, a felony, for stealing from a charitable police fund. (PSR ¶ 33). Defendant was sentenced to 90 days jail and 60 months probation but violated his probation and returned to custody. *Id.* His law enforcement career over, defendant's criminal career grew and from 1974 to 1976 he was suspected of committing several residential and commercial robberies in the San Diego area. (PSR ¶ 34). According to a confidential informant, defendant spoke about two residential robberies which led to his arrest. *Id.* Additionally, a series of restaurant burglaries were considered closed as being committed by the defendant based on his known method of operation and the physical description given by the victims. *Id.* The defendant's accomplice, Dennis Roop, was shot and killed by police. *Id.* (Defendant later married Roop's widow (PSR ¶ 43)).  The confidential informant was later killed in prison. (PSR ¶ 34). In 1977, defendant was convicted of two counts of first degree robbery and one count of conspiracy, all felonies, and sentenced to five years to life in prison. *Id.* In 1994, defendant was again accused of robbery-related crimes and was charged and tried for attempted robbery, first degree burglary, and being a felon in possession of a firearm. (PSR ¶

39). The trial, however, ended in a hung jury and the district attorney declined to re-file the charges. *Id.*

Defendant has gone from being someone trusted to uphold the law to someone who has consistently sought to break it. Although it appears that he enjoys the support of his wife and children, that support does not detract from the need to incapacitate and punish the defendant. This is especially true in light of the fact that defendant's relationship with his co-conspirator, Rafael Miranda, began when Miranda played football for defendant when he was a coach at Midway Baptist High School in San Diego. (PSR ¶ 8). What should have been a positive and productive relationship in which defendant served as a role model instead turned into criminal partnership. Clearly, defendant has a long history of being involved in violent crimes involving robbery, burglary, and firearms. This history is consistent with his current actions in which, even at the age of sixty, defendant planned to obtain silenced unregistered firearms to commit robberies of wealthy targets. Thus, the nature of defendant's criminal history justifies the agreed upon sixty-month sentence.

### 2. Need to Reflect the Seriousness of the Offense

The offense in question, a conspiracy which if followed through to its logical conclusion would have resulted in robbery and potentially murder is very serious. A sentence of sixty months imprisonment is necessary to reflect the seriousness of defendant's crime.

### 3. Deterrence of Criminal Conduct

By imposing the statutory maximum sixty-month sentence the Court has the opportunity to have a strong deterrent effect. Defendant will be deterred from committing more crimes by knowing that another very lengthy prison term awaits him should he re-offend.

### 4. Need to Protect the Public

The public needs to be protected from recidivists, like defendant, who continue to commit serious crimes. A sixty-month sentence of imprisonment, along with a three-year term of supervised release, will without question protect the public from an individual who has demonstrated a continued willingness and ability to engage in serious violent crime.

### 5. Need to Provide Defendant with Education

The need to provide defendant with education and vocational skills, while important in most contexts, must be placed in a subordinate position to the important considerations of deterrence, protection of the public and the need for the sentence to reflect the seriousness of the offense. *See United States v. Wilson*, 350 F. Supp. 2d 910, 921-22 (D. Utah 2005) (noting that legislative history of Sentencing Reform Act demonstrates that Congress intended to place rehabilitation as a secondary consideration where serious crimes were involved). Defendant will have access to many programs in the prison system to which he can avail himself. Neither the presence nor absence of any further educational programs should sway this Court from imposing the agreed upon sixty-month sentence.

### 6. Need to Avoid Unwarranted Disparity in Sentences

Finally, a sentence in accordance with the guidelines also properly accounts for "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Here, the agreed upon sixty-month sentence is within the applicable guideline range.

## V.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court, taking into consideration the sentencing guidelines and sentencing factors set forth in section 3553(a), sentence defendant as agreed to by the parties and recommended by the USPO, namely, sixty months imprisonment, three years supervised release (under the terms and conditions recommended by the USPO), and a $100 special assessment.

DATED: March 4, 2008         Respectfully submitted,

JOSEPH P. RUSSONIELLO
United States Attorney


_____/s/_____
GARTH HIRE
Assistant United States Attorney